UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHERIE E. LASSITER,

      Plaintiff,

v.                                     Case No. 3:15cv406-LC-CJK

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

This case is before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Cherie Lassiter's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.SC. §§ 401-34.  The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73 for all proceedings in this case, including entry of final judgment.  Upon review of the record before the court, I conclude the findings of fact and determinations of the Commissioner are not supported by substantial evidence and application of the proper legal standards.  The decision of the Commissioner, therefore, should be reversed and the matter remanded with instructions.

## ISSUES ON REVIEW

Mrs. Lassiter, who will be referred to as claimant, plaintiff, or by name, raises three issues on appeal. She claims: (1) the Administrative Law Judge ("ALJ") erred in failing to properly assess the opinions of treating physician Dr. LeMay, (2) the ALJ erred in failing to properly assess Mrs. Lassiter's credibility, and (3) the Appeals Council erred in failing to remand the claim based on new evidence of rheumatoid arthritis.

## PROCEDURAL HISTORY

Mrs. Lassiter filed for DIB on April 18, 2012. T. 157-62.[1] The Social Security Administration ("SSA") denied the application initially and upon reconsideration. T. 98-102, 105-09. Mrs. Lassiter appealed the denials by filing a Request for Hearing. T. 16-17. She appeared at an administrative hearing before the ALJ on October 21, 2013. T. 34-59. After the hearing, the ALJ issued a decision finding Mrs. Lassiter not disabled under the Act. T. 18-33. The Appeals Council denied claimant's request for further review; the ALJ's decision therefore became

---

[1] The administrative record, as filed by the Commissioner, consists of seventeen volumes (docs. 8-2 through 8-18) and has 738 consecutively numbered pages. References to the record will be by "T." for transcript, followed by the page number.

the final determination of the Commissioner.  T. 1-6.  That determination is now before the court for review.

## FINDINGS OF THE ALJ

In his written decision, the ALJ made a number of findings relative to the issues raised in this appeal:

- "The claimant has not engaged in substantial gainful activity since March 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*)."  T. 23.

- "The claimant has the following severe impairments: status post left total hip replacement and mild degenerative disc disease of the lumbar spine (20 CFR 404.1520(e))."  T. 23.

- "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."  T. 23.

- "[T]he claimant has the residual functional capacity ["RFC"] to perform a reduced range of sedentary work with lifting 20 pounds occasionally, 10 pounds frequently; can carry 10 pounds occasionally, 5 pounds frequently; can sit one hour at a time, six hours within a workday; stand 2 hours in a

workday; no climbing ladders, ropes, or scaffolds; no squatting or crawling; can occasionally bend, climb stairs, and frequently reach; and after sitting one hour would need to stand for a few minutes, but can stay at the workplace." T. 23-24.

- "The claimant is unable to perform any of her past relevant work." T. 26.

- "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a))." T. 27.

- "[T]he claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2011, through the date of this decision (20 CFR 404.1520(g))." T. 27.

## STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether substantial evidence supports the Commissioner's decision and whether the ALJ applied the correct legal standards. *See Lewis v. Callahan,* 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced

that it is not supported by substantial evidence or that the proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). With reference to other standards of review, the Eleventh Circuit has said that "[s]ubstantial evidence is more than a scintilla. . . ." *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010). Although the ALJ's decision need not be supported by a preponderance of the evidence, therefore, "it cannot stand with a 'mere scintilla' of support." *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the Court "'may not decide the facts anew, re-weigh the evidence, or substitute [its] judgment for that of the [Commissioner]. . . .'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in

the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler,* 768 F.2d 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[2]

The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do her previous work, "but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* at § 423(d)(2)(A).

---

[2] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision.  *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

Pursuant to 20 C.F.R. §§ 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1.     If the claimant is performing substantial gainful activity, she is not disabled.

2.     If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.     If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.     If the claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[3]

5.     Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national

---

[3] Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  *See* 20 C.F.R. §§ 404.1512, 416.912; *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

economy that accommodates claimant's RFC and vocational factors, she is not disabled.

<u>FACT BACKGROUND AND MEDICAL HISTORY</u>

At the time of the ALJ's decision, claimant was forty-eight years old.  T. 38. She attended college one year for hairdresser training and had on-the-job training as a certified nurse assistant.  T. 39.  She apparently worked in both capacities.  T. 39. She was involved in a motor vehicle accident on May 28, 2010.  T. 41, 240-41.  On March 3, 2011, she had an MRI indicating avascular necrosis.[4]  T. 41, 657-58.  Later that month, claimant began treatment with Dr. David E. LeMay, M.D., at Andrews Orthopedic & Sports Medicine.  T. 651.

Under Dr. LeMay's care, claimant underwent total left hip arthroplasty on May 17, 2011.  T. 282-83.  She claims she could no longer work after that.  T. 40. On October 4, 2011, she had another MRI which indicated slight spondylosis at L3-4 and "limited bony disc protrusion complexes without root encroachment concerns" at L4-5 and L5-S1.  T. 448, 468.  On December 9, 2011, Stewart Zweikoft, M.D., diagnosed lumbar spondylosis, lumbar facet syndrome, lumbar radiculopathy,

---

[4] Avascular necrosis is the death of bone tissue due to a lack of blood supply. Also called osteonecrosis, avascular necrosis can lead to tiny breaks in the bone and the bone's eventual collapse.  http://www.mayoclinic.org/diseases-conditions/avascular-necrosis/basics/definition/CON-20025517.

lumbar DDD, lumbago, sciatica, and lumbar annular tear.  T. 449.  For pain, claimant received injections of Omnipaque, Marcaine, and Celestone on December 15, 2011 and January 5, 2012; she reported relief only from the December injections.  T. 451-54.

Kurt Morrison, D.O., noted on May 10, 2012, that claimant experienced radicular pain down her leg, ambulated with a cane, and walked with an antalgic gait.  T. 461.  Dr. Morrison also noted groin pain and pain over L5 and anteriorly over L4.  T. 461.  Dr. Morrison's impressions were "post total arthroplasty, left hip, for AVN;" chronic pain; and L4-L5 radiculopathy with previous history showing fragmentation of disk into the L4-L5 nerve root.  T. 461.

Dr. LeMay later noted pain over the piriformis muscle, despite trigger point injections.  T. 485-86, 497.  On October 4, 2012, Dr. LeMay observed atrophy in the left quadriceps and said the injections gave only temporary pain relief.  T. 521.  Dr. LeMay diagnosed myofascial pain syndrome, hip pain, piriformis tightness and intermittent sciatica, and chronic hip pain.  T. 521.

Approximately five weeks later, on November 12, 2012, Dr. Morrison noted claimant had Trendelenburg gait, which plaintiff's memorandum characterizes as

"an abnormal gait associated with a weakness of the gluteus medius."  T. 503, Doc.

10 at pg. 6 (citing http://medicaldictionary.thefreedictionary.com/Trendelenburg+

gait).

     Dr. LeMay completed a Physical Capacities Evaluation on January 10, 2013,

indicating claimant could stand/walk not more than two hours out of an eight-hour

work day; frequently lift up to ten pounds; occasionally lift up to twenty pounds;

frequently carry up to five pounds and occasionally carry up to ten pounds; could

not push/pull leg controls with her right foot or squat or crawl; could occasionally

bend and climb; could frequently reach; and could not drive automobile equipment

or be exposed to dust, fumes, or gases.  T. 501.  Dr. LeMay also completed a Clinical

Assessment of Pain, in which he indicated, "given the nature of the impairment, the

degree to which pain is typically of major concern in that impairment, and the extent

to which the patient expresses the presence of pain and requests medication for its

relief[], . . . [p]ain [was] frequently present to such an extent as to be distracting to

the adequate performance of work activities" and "medication[s] [did] not have any

significant effect upon [plaintiff's] ability to work."  T. 500.

     After multiple courses of physical therapy, Dr. Morrison noted on April 4,

2013, that claimant still complained of pain over her buttocks and radiating down

her leg.  T. 504.  Dr. Morrison obtained a second opinion from Dr. E. Jean Dabezies, M.D.  T. 682.  Dr. Dabezies noted an antalgic gait.  T. 683.  He also noted the pattern of pain was most consistent with fibromyalgia.  T. 685.  Dr. Dabezies performed two injections, one of which gave no relief and was more painful than the average injection, according to claimant, and another injection into the posterior buttock, "down to the bone with a large spinal needle," which gave some relief.  T. 685.  After an MRI showed an L5-S1 "annular tear without significant disc protrusion," Dr. Dabezies referred claimant to a rheumatologist for evaluation of fibromyalgia.  T. 685, 687.

Dr. David Fairleigh, M.D., also saw claimant.  On June 24, 2013, Dr. Fairleigh noted significant insomnia secondary to pain, tenderness to palpitation of the low back, and decreased sensation to the lower extremities.  T. 527, 530.  Dr. Fairleigh diagnosed lumbosacral spondylosis, degenerative lumbar intervertebral disc, thoracic/lumbosacral neuritis, unspecified arthroplasty pelvis and thigh, and myofascial pain.  T. 530.

Claimant saw neurologist Daniel E. Ross, D.O., complaining of headaches and cervical pain.  T. 692.  On October 10, 2013, another MRI indicated, among other things, "limited scoliosis, straightening in the cervical region, and slight

compensatory spondylosis of a non-encroaching pattern, slightly more so C4-5 and C5-6." T. 691. Dr. Ross found the symptoms "more than likely" consistent with an essential tremor. T. 701.

Lab results from February 11, 2014, indicated an elevated sedimentation rate of 26.[5] T. 731, 735. Claimant visited Ellen McKnight, M.D., the next day. T. 710. Dr. McKnight diagnosed seronegative rheumatoid arthritis. T. 710. Claimant visited Dr. Barbara French, on March 6, 2014, who diagnosed hypertension, arthralgias, fibromyalgia, and depression and noted claimant had pain in her hands, shoulders, hips, knees, and shins. T. 710.

State agency medical consultant Minal Krishnamurthy, M.D, reviewed the evidence of record. Dr. Krishnamurthy believed plaintiff retained the RFC to perform light work with standing/walking for two hours; sitting for six hours; occasionally climbing ramps and stairs, balancing, and crawling; no climbing ladders, ropes, or scaffolds; and avoiding even moderate exposure to moving machinery and unprotected heights. T. 90-96.

---

[5] "Sedimentation rates are indicators in the blood of inflammation in the body. People with rheumatoid arthritis often have high sedimentation rates." http://www.mayoclinic.org/diseases-conditions/rheumatoid-arthritis/diagnosis-treatment/diagnosis/dxc-20197396.

At the hearing, claimant testified about her health, daily activities, and work experience.  T. 34-59.  She had been disabled since March 1, 2011, due to myriad ailments and impairments that began with the car accident in May 2010.  T. 40-41.  She developed necrosis from taking steroids over the years for respiratory conditions.  T. 41.  She had a total hip replacement in May 2011.  T. 41.  After the accident, she suffered from low back pain.  T. 42.  She had additional problems with the right side of her lower back.  T. 42.  Claimant used a cane when her leg gave out and because she had fallen three to four times in the past.  T. 42.  Her balance had gotten worse since the hip replacement.  T. 42-43.  Sciatica limited sitting to no more than about fifteen to twenty minutes at a time.  T. 43-44.  She could walk no more than twenty-five to thirty minutes and could lift a gallon of milk.  T. 46-47.  She tried to catch up on sleep during the day because she did not sleep well at night.  T. 48-49.  Claimant testified to having average pain of seven to eight on a ten-point scale.  T. 50.

Vocational expert Vickie Pratton also testified at the hearing.  Ms. Pratton confirmed plaintiff worked as a certified nurse assistant, a medium exertion job with a Specific Vocational Preparation ("SVP") of 4, and hair stylist, a light exertion job with an SVP of 6.  T. 54.  Ms. Pratton was asked to assume an individual the same

age, education, and past work experience as claimant who was limited to sedentary work, could sit for six and stand for two hours out of an eight-hour work day, could not squat, crawl, or climb ladders, ropes, or scaffolds, and could occasionally bend at the waist and climb stairs.  T. 54.  She was then asked whether there were jobs such an individual could perform.  T. 54.  Ms. Pratton testified that such an individual could be a surveillance system monitor, document preparer, and final assembler, all of which are sedentary positions with an SVP of 2.  T. 54.

Ms. Pratton was then asked to assume an individual who could sit for one hour but then would need to stand and stretch for five minutes before sitting back down, while remaining at her work station.  The ALJ asked Ms. Pratton whether the additional restrictions would impact such an individual's ability to perform the specified jobs.  T. 55.  Ms. Pratton testified the only position that would be impacted would be the assembler job because of the production pace; Ms. Pratton thought, however, the individual could still perform the job but would be more suited for a position as an election clerk.  T. 55.  The ALJ then asked whether an individual who had problems maintaining concentration because of medication and pain, which caused her to be off task fifteen to twenty percent of the time, would be able to

maintain any of the specified jobs or any other jobs.  T. 55.  Ms. Pratton responded in the negative.  T. 55.

While the claim was pending before the Appeals Council, claimant received, and submitted, results from lab tests conducted on February 11, 2014.  These results indicated an elevated sedimentation rate, a finding relevant to arthritis.

## ANALYSIS

I.    Treating Physician's Opinion

Claimant urges the Commissioner erred in failing to properly assess the opinion of treating physician Dr. LeMay.  Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  "Good cause" exists when:  (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Phillips*, 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion about the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(c)(2). Where a treating physician has merely made conclusory statements, however, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d), 416.927(c)(2).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 357 F.3d at 1241. Failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (*citing MacGregor v. Bowen*, 786 F.2d

1050, 1053 (11th Cir. 1986)); *see also Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x. 589, 591 (11th Cir. 2006).  An ALJ may choose to accept some conclusions – or restrictions – within an opinion while rejecting others.  If such a choice is made, in addition to explaining the overall weight given to a particular medical opinion, the ALJ also must explain "'with at least some measure of clarity the grounds for [a] decision'" to adopt particular aspects of a medical opinion.  *Winschel*, 631 F.3d at 1179 (*quoting Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).  Failure to explain the rationale for crediting only certain aspects of an opinion will result in a reviewing court "declin[ing] to affirm 'simply because some rationale might have supported the ALJ's conclusion.'"  *Id*.  In other words, "[p]icking some restrictions while rejecting others *without explanation* is clearly grounds to find that an ALJ's decision is not supported by substantial evidence and, therefore, order that it be remanded for further consideration."  *Smith v. Colvin*, No. 2:13-00275-N, 2014 WL 518057, at *3 (S. D. Ala. Feb. 10, 2014).

Pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529, provides, in part, that the Commissioner will not find disability based on symptoms, including pain alone, "unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these

symptoms." *Accord* 20 C.F.R. § 416.929.  The Eleventh Circuit has articulated a

three-part pain standard, sometimes referred to as the *Hand*[1] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson,* 284 F.3d at 1225 (*citing Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.

1991)).   The Eleventh Circuit also has approved an ALJ's reference to and

application of the standard set out in 20 C.F.R. § 404.1529 because that regulation

"contains the same language regarding the subjective pain testimony that [the

Eleventh Circuit] interpreted when initially establishing its three-part standard."

*Wilson*, 284 F.3d at 1226.

Notably, "while both the Regulations and the *Hand* standard require objective

medical evidence of a condition that could reasonably be expected to cause the pain

alleged, neither requires objective proof of the pain itself."  *Elam*, 921 F.2d at 1215.

Indeed, the Eleventh Circuit has recognized that "pain alone can be disabling, even

---

[1] *See Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (*citing Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1259 (M.D. Fla. 2005). A reviewing court may, however, consider the presence or absence of evidence to support symptoms of the severity of pain claimed. *Marbury*, 957 at 839-40; *Tieniber*, 720 F.2d at 1253.

Here, although the ALJ gave great weight to Dr. LeMay's opinion regarding RFC, he rejected Dr. LeMay's pain assessment. Again, in the Physical Capacities Evaluation, Dr. LeMay indicated plaintiff was limited to standing and/or walking not more than two hours in an eight-hour work day; could frequently lift up to ten pounds and occasionally lift up to twenty pounds; could frequently carry up to five pounds and occasionally carry up to ten pounds; could not push or pull leg controls with her right foot; could not squat or crawl; could only occasionally bend and climb; could frequently reach; could not drive automobile equipment; and could not be exposed to dust, fumes, or gases. T. 501. Dr. LeMay diagnosed fibromyalgia and chronic hip pain. T. 501. In the Clinical Assessment of Pain form, Dr. LeMay stated "given the nature of the impairment, the degree to which pain is typically of major concern in that impairment, and the extent to which the patient expresses the

presence of pain and requests medication for its relief," Mrs. Lassiter has pain that "is frequently present to such an extent as to be distracting to the adequate performance of work activities." T. 500. Dr. LeMay continued, "[m]edications [did] not have any significant effect on [plaintiff's] ability to work." T. 500.

In considering Dr. LeMay's opinions, the ALJ concluded, "the only way to reconcile the capacity form and the pain form is that the amount of pain listed would occur if claimant does more than the doctor's residual functional capacity allows." T. 26. The ALJ thus rejected Dr. LeMay's pain assessment insofar as it pertained to plaintiff's residual functional capacity but provided no explanation for the decision in that regard, much less an explanation that provided with clarity the grounds for the decision. Moreover, nothing in Dr. LeMay's treatment notes supports this deduction. Given the absence of any explanation, the undersigned cannot determine whether the ALJ's decision to reject Dr. LeMay's pain assessment was supported by substantial evidence. Remand, therefore, is warranted on the issue.

II.    Credibility

Claimant next argues the Commissioner erred in failing to properly assess her credibility. The ALJ found "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms to some degree." T. 25. He

also found "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms . . . not entirely credible. . . ."  T. 25.  If the Commissioner refuses to credit the plaintiff's subjective testimony concerning pain, he must do so explicitly and give reasons for his decision in that regard.  *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  Where he fails to do so, the testimony may be accepted as true as a matter of law.[2]  *Holt*, 921 F.2d at 1223; *MacGregor*, 786 F.2d at 1054.  Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [claimant's] testimony, but

---

[2] In *MacGregor*, the court advised that:

> If the Secretary refuses to credit such testimony he must do so explicitly and give reasons for that decision. *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir.1982). Where he fails to do so we hold as a matter of law that he has accepted that testimony as true.

786 F. 2d at 1054.  Relying upon the earlier case of *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir.1982), however, courts in the Eleventh Circuit are now generally opting for remand in cases of inadequate credibility determinations (as well as cases involving rejection of treating physician opinion).  *See, e.g., Lawton v. Comm'r*,431 F. App'x 830, 835 (11th Cir. 2011); *see also Albery v. Comm'r of Soc. Sec.*, No. 6:11cv437-Orl-19GJK, 2012 WL 2589297, at *10 (M. D. Fla. June 7, 2012) ("The Eleventh Circuit has recently receded from [the *MacGregor*] language.").

whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x. 935, 939 (11th Cir. 2011).

Here, the ALJ considered claimant's subjective complaints and explained his reasoning for finding her not entirely credible.  T. 24-26.  That determination was made, however, without considering Dr. LeMay's pain assessment, which the ALJ erroneously rejected.  In the event the ALJ credits Dr. LeMay's pain assessment on remand, the credibility assessment could change.   The finding on plaintiff's credibility thus must be vacated and remanded.

III.    Newly Discovered Evidence

Lastly, claimant faults the Appeals Council for failing to remand the claim to the ALJ based on new evidence of rheumatoid arthritis.  "In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. § 416.1470(b).  The Commissioner argues that evidence of rheumatoid arthritis, dated May 2014, was not chronologically relevant to the ALJ's decision on March 27, 2014.  (Doc. 11 P. 21-22).

The Appeals Council stated the following when rejecting plaintiff's newly submitted evidence:

> We also looked at medical records from Barbara French, M.D., dated May 15, 2014 (1 page); and medical records from Ellen McKnight, M.D., dated May 5, 2014 (7 pages).  The Administrative Law Judge decided your case through March 27, 2014.  This new information is about a later time.  Therefore, it does not affect the decision about whether you were disabled beginning on or before March 27, 2014.

T. 2.

The Appeals Council erred in rejecting the newly submitted evidence because although the evidence is dated May 5 and 15, 2014, it concerns appointments and lab results on February 11 and 12 and March 4 and 6, 2014, all of which were within the relevant period.  T. 710, 720, 727, 731, 735.  The remand here should include reconsideration of plaintiff's RFC in light of the newly submitted medical evidence. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

<u>CONCLUSION</u>

For the reasons set forth above, the undersigned finds the Commissioner's decision not supported by substantial evidence and application of the proper legal

standards. [6]  *See Carnes*, 936 F.2d at 1218 ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  The ALJ's decision therefore should be reversed and the matter remanded for further consideration consistent with this report and recommendation.  Although concluding remand is warranted, the undersigned expresses no opinion as to the merits of plaintiff's claim for benefits.

Accordingly, it is respectfully RECOMMENDED:

1.     That the decision of the Commissioner be REVERSED and the matter REMANDED for further proceedings consistent with this report and recommendation.

2.     That the clerk be directed to close the file.

DONE AND ORDERED this 15th day of August, 2016.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITEDSTATESMAGISTRATEJUDGE**

---

[6] The court notes that, to the extent it reviewed the legal principles upon which the ALJ's decision is based, it conducted a *de novo* review.  *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.